**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

<table>
<tr><td>

**UNITED STATES OF AMERICA**,

v.

**BENNIE J. FLOYD**,

Defendant.

</td><td>

Case No. 1:21-cr-200 (TNM)

</td></tr>
</table>

**<u>MEMORANDUM ORDER</u>**

In 2021, Bennie Floyd received a 72-month sentence for conspiring to distribute more than 500 grams of cocaine. *See* Plea Agreement, ECF No. 12; Judgment at 1–2, ECF No. 23. Floyd now moves for a reduction in his sentence—to a sentence of 59 months. *See* Def.'s Mot. to Reduce Sentence ("Def.'s Mot.") at 1, ECF No. 28. He is eligible for such a reduction because of a Guidelines amendment impacting so-called "status points." *See* Amend. 821 (Part A), U.S.S.C. (eff. Nov. 1, 2023). But the applicable sentencing factors in 18 U.S.C. § 3553(a) do not warrant a reduction. So the Court denies Floyd's motion.

**I.**

For nearly two years before his arrest, Floyd conspired to import and distribute large quantities of cocaine between various locations, including Washington D.C., Maryland, Puerto Rico, and the U.S. Virgin Islands. Final Presentence Report ("PSR") ¶ 14, ECF No. 18. In early 2021, U.S. Customs and Border Protection discovered two packages (one in St. Thomas and the other in San Juan) containing large quantities of cocaine set for shipment to Washington. *Id.* ¶¶ 14–15. Officers soon discovered video footage showing Floyd mailing the packages. *Id.* ¶¶ 19, 22. They responded by staging a controlled delivery, during which Floyd was arrested. *Id.* ¶ 21.

A few months later, Floyd pled guilty to one count of conspiracy to distribute and possess with intent to distribute five hundred grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii), and 846.  Plea Agreement at 1.  The Court sentenced him to 72 months of incarceration, to run consecutive to any other sentence, followed by 60 months of supervised release.  Judgment at 2–3.  Floyd now asks the Court to reduce his sentence to 59 months.  Def.'s Mot. at 3–4.  His motion is ripe.

## II.

A couple years after Floyd was sentenced, the U.S. Sentencing Commission promulgated Amendment 821, which changes how "status points" affect criminal history calculations.  *See* Amend. 821 (Part A), U.S.S.C. (eff. Nov. 1, 2023).  Under that amendment, the Guidelines no longer add two "status points" to an offender's criminal history score for "committ[ing] the instant offense while under any criminal justice sentence."  *Id.*  Now, only offenders with at least seven criminal history points receive a status point—and only one point.  *See* U.S.S.G. § 4A1.1, cmt. n.5.

Floyd says the Amendment makes a difference.  It leaves him with only six criminal history points, which places him in Criminal History Category III instead of IV.  Def.'s Mot. at 3.  Paired with his total offense level of 23, Floyd's advisory sentencing range changes from 70 to 87 months' imprisonment to 57 to 71 months' imprisonment.  U.S.S.G. Ch. 5 Pt. A (Sentencing Table).  Because this change to the Guidelines happened after Floyd was sentenced, the Court has discretion to reduce his sentence.  *See* 18 U.S.C. § 3582(c)(2).  Any reduction must satisfy the Commission's "applicable policy statements" and account for any applicable factors in 18 U.S.C. § 3553(a).  *Id.*

Evaluating a sentence reduction under § 3582(c)(2) boils down to a two-step process. *See Dillon v. United States*, 560 U.S. 817, 826 (2010). At step one, the Court must examine if Floyd is eligible for a reduction. *Id*. at 827. It does so by assessing whether his original sentence was based on a Guidelines range that has since been lowered by the Sentencing Commission through a retroactive amendment to the Guidelines. *Id.* The Court must determine what the Guidelines range would have been had the amendment been in effect when Floyd was originally sentenced. *Id*. The Court also may not reduce his sentence below the new Guideline minimum. *Id*.

If Floyd qualifies, the Court moves to step two, where it must consider the relevant § 3553(a) factors and determine whether the particular circumstances of this case justify a reduction. *Id*. The choice to reduce a sentence at step two rests within the Court's sole discretion. *See* 18 U.S.C. § 3582(c)(2) (stating courts "*may* reduce the term of imprisonment" (emphasis added)); *see also United States v. Vautier*, 144 F.3d 756, 760 (11th Cir. 1998) (stating this grant of authority "is unambiguously discretionary").

### III.

Start with step one. As both parties recognize, Floyd is eligible for—but not entitled to—a sentencing reduction under Amendment 821. *See* Def.'s Mot. at 3; Gov't Opp'n at 6, ECF No. 29. Floyd received two status points when he was originally sentenced. *See* Sentencing Tr. at 42:17–42:19. Under the Amendment, however, he would have received none, which, recall, changes his Guidelines range from 70 to 87 months to 57 to 71 months' imprisonment. U.S.S.G. Ch. 5 Pt. A (Sentencing Table). The difference makes Floyd eligible for a reduction. *See* U.S.S.G. § 1B1.10.

Now for step two. The Court concludes that the relevant § 3553(a) factors and circumstances of Floyd's case do not favor his early release. Since Floyd's sentencing, two things have changed. First, the Sentencing Commission amended the Guidelines. *See supra*. Second, Floyd has developed a significant disciplinary record in prison. The first change does not ultimately affect the Court's prior weighing of the § 3553(a) factors, and the second change confirms it.

Consider first the amended Sentencing Guidelines' effect on Floyd's sentence. His original 72-month sentence is one month above his new Guidelines range, but nothing obliges the Court to lower the sentence accordingly. *United States v. Jones*, 846 F.3d 366, 372 (D.C. Cir. 2017). The Circuit has "never adopted the view that a district court completing" a § 3582(c)(2) sentence "reduction motion is either required" to "downshift" an existing sentence based on new Guidelines, "or even to offer any special reasons refusing to do so." *Id.* Rather, just "as in an ordinary initial sentencing, the Guidelines provide the starting point and the initial benchmark but are "not the only consideration." *Id.* (cleaned up).

On the facts of Floyd's case, the Court "disagree[s] with the Commission's views" changing its policy and thus declines to follow its amended Guidelines range. *See Pepper v. United States*, 562 U.S. 476, 501 (2011). Floyd began the present offense months after his release from prison for another serious offense, while on supervised release. Sentencing Tr. at 61:24–62:01. His nearly immediate return to criminal conduct reflects a high risk of recidivism and calls for additional punishment beyond what the new Guidelines suggest. It also suggests a disregard for court rules and judicial oversight that the new Guidelines failure to capture.

The Court drove home these points at Floyd's sentencing, and its reasoning still applies. After a thorough weighing of the § 3553(a) factors, the Court chose a higher sentence than either

party recommended.  *Compare* Sentencing Tr. at 65:08 (imposing a 72-month imprisonment term) *with id.* at 47:15–47:16 (discussing the Government's recommendation of a 60-month imprisonment term).  Much of its emphasis concerned Floyd's violent criminal history, which developed largely while on supervised release for other offenses.  *Id.* at 61:12–62:12.  Indeed, Floyd's inclination to reoffend troubled the Court "even more" than the drug crime at issue and thus "weigh[ed] heavily in" its sentence.  *Id.* at 61:13, 62:12.  At 13, Floyd was convicted of robbery.  *Id.* at 61:14–61:15.  While on probation for that offense, Floyd murdered a man by shooting him in the face and chest.  *Id.* at 61:14–61:16.  While in prison for this offense, Floyd regularly "produced and consumed heroin," and faced discipline for "fighting and possessing a weapon."  *Id.* at 61:16–61:19.  More, Floyd tried to kill his murder victim's wife "in what appear[ed]" to the Court  "to be an effort to silence an important witness against" Floyd.  *Id.* at 61:20–61:22.

Following this series of offenses, Floyd "got a real break" from an early release.  *Id.* at 61:23–61:25.  Yet despite his good fortune, Floyd "started reoffending in this case" within months of his release and while on probation for the last two cases.  *Id.* at 61:25–62:02.  And his new criminal pursuit involved a "a significant," long-term role in "one of the more sophisticated and large-scale operations" for drug trafficking in Washington, D.C.  *Id.* at 61:03–61:09.  This extensive, serious record left the Court with "no doubt that [he] pose[s] a significant danger to the community."  *Id.* at 62:06–62:07.  The Court was "very concerned" that if it gave him "a break," he "would simply reoffend again."  *Id.* at 62:07–62:09.  The Court is just as concerned now as it was then.  No matter what the Sentencing Commission thinks, Floyd's criminal history, marked by repeated recidivism while on supervised release, is independently relevant and blameworthy.  *See Jones*, 846 F.3d at 372.

Turning to the second change, Floyd's behavior while in prison for this offense reinforces the Court's concerns and separately counsels against a sentence reduction. Since his current term of imprisonment began, Floyd has incurred eight disciplinary infractions. Inmate Disciplinary Data at 14–19, ECF No. 29, Ex. 1. Four violations occurred just within the last few months, and several infractions involve serious offenses. *Id.* Consider the details. Most recently, a prison official found Floyd in possession of an "improvised weapon made of a metal-like material" that spanned over five inches (Floyd claimed he was framed for this offense). March Discipline Report at 23, ECF No. 29, Ex. 2. That infraction occurred just three months ago. A few months earlier in fall 2025, officials cited Floyd for fighting and swinging a metal bar during that fight. Nov. Discipline Report at 35, ECF No. 29, Ex. 4. More, in July 2025, Floyd was cited for making inappropriate sexual remarks to a correctional officer. May Discipline Report at 28–29, Ex. 3. And a few months before that incident, Floyd was cited for assaulting another inmate. Disciplinary Data at 15 (listing a May 2025 assault). The list goes on. *Id.* (showing multiple other citations for drug and alcohol use).

While Floyd describes this series of infractions as "misleading" or understandable given the stresses Floyd faced in prison, Def.'s Reply at 6, ECF No. 30, the Court disagrees. These infractions reflect a pattern of defiant behavior. That remains so despite Floyd's unrelated claim of sexual misconduct by a correctional officer. Inmate Statement at 3, ECF No. 32 (filed under sealed). Misconduct by another is not a license for Floyd to repeatedly violate rules, regulations, and the law. And the alleged misconduct is not so serious that a downward reduction would otherwise be appropriate. *Cf.* U.S.S.G. § 1B1.13(b)(4)(A) (noting that prisoner sexual abuse victims may have grounds for compassionate release if the misconduct is "established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an

administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger"). Floyd's rap sheet confirms that the Court's findings at sentencing continue to carry force.

Summing up, no changes since sentencing call for a lower sentence. Between the troubling offense at issue, Floyd's violent criminal and recidivist history, and his continued disciplinary issues, Floyd still needs a 72-month sentence to deter him from future criminal behavior and to protect the public. *See* 18 U.S.C. § 3553(a)(2)(B), (a)(2)(C); *see also id.* § 3582(c)(2) (stating courts must only consider the "applicable" § 3553(a) factors). That is so even if Floyd's sentence is above his new Guidelines range. *See Pepper*, 562 U.S. at 501. Floyd's sentence stands.

Floyd resists these conclusions but does not persuade the Court. To start, he emphasizes that the Government initially requested a 60-month sentence, "a mere one month" more than the sentence Floyd now seeks. Def.'s. Mot. at 4. But to repeat, the Court already considered that request along with the Defense's, yet based on its own analysis of the facts and circumstances of the case, it imposed a higher sentence. *See* Sentencing Tr. at 65:08. The Government's prior request for a low sentence did not tie the Court's hands then, and it does not now. *See United States v. Gardellini*, 545 F.3d 1089, 1096 (D.C. Cir. 2008).

Next, Floyd points to his positive prison behavior. He participated in a faith-based reentry program called "the Threshold Program" and he planned to participate in the "Residential Drug Treatment Program." Def.'s Mot. at 1, 4. These examples of Floyd's productive behavior, while positive steps, do not overcome Floyd's substantial criminal history and prison disciplinary record. Rather, "[t]aking classes while incarcerated is common rather than extraordinary," *see United States v. Vaughn*, 62 F.4th 1071, 1072 (7th Cir. 2023); *see also United States v. Monday*,

390 F. App'x 550, 556 (6th Cir. 2010) (recognizing that completing classes does "not go beyond what would ordinarily be expected during incarceration").[1] So too for his efforts to alert a prison official when he saw an inmate trying to hang himself. *Cf. Taylor v. Hawk-Sawyer*, 39 F. App'x 615, 615 (D.C. Cir. 2002) ("Appellant's conduct in helping to save the life of a correctional officer is indeed commendable; however, the district court properly determined the statute does not provide a basis for the court to compel the Director to consider filing [a sentence reduction] motion."). While the Court appreciates Floyd's use of institutional programming and his efforts to help an inmate during a near-death experience, these circumstances do not render a sentence reduction consistent with the factors set forth in § 3553(a) given his serious offense, violent criminal history, and lengthy disciplinary record from prison. 18 U.S.C. § 3582(c)(2).

**IV.**

For these reasons, it is hereby

**ORDERED** that Defendant's [28] Motion to Reduce Sentence is DENIED.

**SO ORDERED**.

Dated: June 29, 2026                                    TREVOR N. McFADDEN, U.S.D.J.

---

[1] Floyd correctly notes that cases analyzing what prison behavior justifies a sentence reduction typically arise in motions for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), which requires "extraordinary and compelling reasons" for the reduction. Though Floyd need not make that showing for a reduction under § 3582(c)(2), the logic of these authorities helps show why his prison behavior, that is more expected than exceptional, does not undermine the Court's § 3553(a) considerations.